Chernoff, J.
At issue in cross-motions for summary judgment is whether permanent intermittent police officers have a statutory and/or contractual right to private police detail work. The two plaintiffs are unpaid permanent intermittent police officers for the Town of Foxborough (Town) who claim rights equal to those of full-time police officers to private details including work at the Foxborough Stadium and Raceway. They seek declaratory and injunctive relief from this Court. The International Brotherhood of Police Officers (IBPO) has intervened as a party defendant. The Court rules that the plaintiffs have neither a statutory right under the Civil Service laws nor a contractual right under the collective bargaining agreement to equal paid detail work.
The Facts
Permanent intermittent police officers are civil service employees governed by the Civil Service Act, chapter 31 M.G.L. Permanent intermittent police officers comprise the pool from which police officers are selected.[1] They are not employed in a full-time capacity, and although an examination is a prerequisite, they do not undergo police training until selected as regular police officers. A person may occupy this unpaid status for a substantial period. Although a permanent intermittent police officer is eligible to be called upon to serve as a paid police officer for the municipality, historically this is rare. In Foxborough, permanent intermittent police officers are not activated for temporary duty assignments and it appears that only one permanent intermittent officer has ever been called up to work in the place of an officer on temporary leave. The two plaintiffs have been intermittent police officers for the Town since 1989.[2]
Reserve officers, in contrast, are appointed by the Town’s Board of Selectmen pursuant to Chapter 85 of the Acts of 1986[3] and they enjoy no civil service protection. They are appointed annually and are subject to reappointment by the Board on the recommendation of the Chief of Police. Most reserve officers are also regular police officers in cities and towns. Over the years, only regular full-time police officers and reserve police officers work paid details. Foxborough Stadium and the Foxborough Raceway occasion the need for a great number of paid detail assignments and hence the appointment of a large pool of reserve officers. Plaintiff Muir was a reserve officer who was not reappointed in 1991. Plaintiff Kelloway served in the capacity of reserve officer for a period, but was never formally appointed.
The Court understands that the Chief of Police of Foxborough is also the chief of security at the Stadium.[4] According to the Agreement between the Town and the IBPO, paid details must first be offered to regular officers on a seniority basis. Counsel informed the Court at oral argument that assignments are then made from the ranks of reserve officers. The Town and the IBPO take the position that the plaintiffs are ineligible for private detail work unless or until they are appointed as reserve officers, hired as full-time officers, or are otherwise activated to a full-time police officer status.[5] The plaintiffs argue that the Chief of Police/Chief of Security operates a patronage type of system because reserve officers, who have no civil service status and essentially serve at the pleasure of the Chief of Police, are selected over persons with civil service status for detail work. The defendants respond that all reserve officers are fully trained and that untrained intermittents are inappropriate for the near-combat conditions at Foxborough Stadium.
Plaintiffs’ Statutory Claim
Plaintiffs argue that a provision of the Civil Service law mandates that permanent intermittent police officers be treated equally with all full-time police officers. The relevant portion[6] of c.31 M.G.L s.34 is as follows:
Each appointing authority employing persons as permanent employees in less than full-time civil service positions shall, insofar as possible, provide such persons equal opportunity for work.
Assuming, without deciding, that unpaid dormant permanent intermittent officers are within the scope of the statute, logic would dictate that the legislature’s intention was to prevent the favoring of one intermittent officer over another rather than providing untrained officers in waiting with the same benefits as full-time officers. If one intermittent officer, to the *237 exclusion of the others, unfairly received favored treatment which enhanced his opportunity for selection when a vacancy arose, then there would be a statutory violation. If only full-time officers were included in the eligibility list for a conference in Hawaii, it would strain credulity to find a basis in the statute to mandate inclusion of dormant intermittents.
If one were to construe the statute so as to mandate equal opportunity for work among all employees, full-time, part-time, and intermittent, it is likely that the statute is intended to limit its application to public employment opportunities rather than off-duty private employment which is made available to public employees.
Plaintiffs’ Contractual Claim
Plaintiffs contend that the overtime provision of the collective bargaining agreement defines permanent intermittent officers as regular employees for all purposes and the definition should carry over to the private detail portion of the agreement.
The following are the pertinent portions of the agreement:
ARTICLE XIX — OVERTIME
A. All overtime will be offered to regular Officers first and included in that category will be any Civil Service intermittent Patrolman, and that overtime will be equally distributed among members of that described group available for such work.
B. All overtime will be at time and one-half rate for all hours in excess of eight (8) hours per day and forty (40) hours per week.
ARTICLE XXI — EXTRA PAID DETAIL
A. All extra paid details will be offered to regular Officers first. Said details to be assigned by the Chief of Police, or his representative, as set out hereafter on a voluntary basis.
A common sense reading of the Overtime provision is that an intermittent officer who is activated and has worked an eight-hour day or a 40-hour week has rights to overtime equal to that of a full-time officer who has also worked an eight-hour day or a 40-hour week. Obviously the two permanent intermittent officers who are now working for other police departments cannot have an equal right to overtime with those officers who work full-time in Foxborough. Therefore, the Court finds that the appropriate construction of the statute is that, included in the category of regular officers are intermittent officers who have just worked an eight-hour day or a 40-hour week for Foxborough.
If Article XIX — Overtime is held to define the category of regular officers for all purposes in the Agreement, then intermittent officers who are activated to a full-time status have a right under the Extra Paid Detail provision to private detail work on a seniority basis. Neither of the plaintiffs have been activated to work full-time and thus the provision confers no present rights to detail work.[7]
If the term “regular Officers” in the Extra Paid Detail Article of the Agreement is not defined by the Overtime Article, then there is nothing which confers any rights at all on the plaintiffs, especially since the Court has previously ruled that the Civil Service law does not require opportunities for permanent intermittent officers equal to those of full-time officers.
It is a well-settled principle that the meaning of terms in a contract will be determined in light of the contract as a whole. Connecticut Indemnity Co. v. Lee, 74 F.Supp. 353, 358 (D.Mass. 1948), aff'd 168 F.26 240. The construction of the Agreement as a whole supports the Intervenor’s position that intermittent police officers do not enjoy the same benefits to work paid details as regular officers. They are basically individuals who are awaiting appointment and training. When a contract is ambiguous on its face, the construction given to it by the parties will be accorded great weight. Crowe v. Bixby, 237 Mass. 249, 253 (1921); Ryerson v. Fall River Philanthropic Burial Society, 315 Mass. 244 (1943). Here, both parties to the contract agree that they did not intend to allow intermittent police officers to work paid details.[8] This Court declines to read such an unintended meaning into the contract.
Other Issues
The defendants seek dismissal on grounds that the plaintiffs have failed to exhaust administrative remedies, failed to join the Civil Service Commission, and failed to exhaust any grievance-arbitration remedies. The subject matter jurisdiction of this Court is also questioned.
The Court rules that the plaintiffs are properly before this Court in equity. The Civil Service Commission previously declined jurisdiction when faced with an issue of reduced compensation. The issue here is more inclusive and the Commission is not a necessary party to consideration of declaratory relief here. The plaintiffs are not members of the Union and it would be inappropriate under the circumstances to require them to follow a grievance or arbitration procedure required for the parties to the Agreement or the union membership.
Ruling
In view of the holdings and discussion above, the Court grants summary judgment in favor of the defendants, thereby ruling that the plaintiffs are not entitled to injunctive relief or a declaratory ruling that provides them with equal opportunity for paid detail work.

 Approximately one dozen municipalities in the Commonwealth employ permanent intermittent police officers as the mechanism for hiring full-time police officers.

 The plaintiffs are on the current list of ten permanent intermittents established in 1989. Of the ten, one is now deceased, two have been appointed as regular full-time offi *238 cers in other departments, and one is filling a temporary vacancy on the Foxborough Police Department.

 An Act Establishing a Reserve Police Force in the Town of Foxborough.

 The propriety of said dual office holding is not before this Court.

 A permanent intermittent police officer is eligible for appointment by the Board of Selectmen as a reserve officer. Of the six unpaid permanent intermittent officers on the current list, one is a member of the reserve police force and he works paid details.

 It may be that this provision does not apply to intermittent employees as they may be “no-time” municipal employees with fulltime jobs elsewhere or at most employees who work intermittently on a nonregular basis.

 The one intermittent officer who is presently filling in for an officer on temporary leave may have paid detail rights under the first construction of the contract.

 All three parties agree that the Agreed Statement of All Material Facts contains the facts necessary for a decision on Summary Judgment. No party requested consideration of the collective bargaining notes of the parties to the Agreement.